## Beaunit Mills, Inc. *v.* Burstein Brothers, Appellants.

*Contracts—Sample—Defective material—Reasonable inspection.*

In an action of assumpsit to recover the contract price of materials sold by sample, there was evidence that after all but three pieces had been cut and sewed the material was found to be so defective that it would not hold the stitches properly. Defendants admitted that no inspection was made on delivery. Plaintiff testified that a few stitches in the material would have disclosed the defect.

Under such circumstances it was proper for the court to submit to the jury the question whether a testing of the material by putting in a few stitches was part of the reasonable inspection which defendants should have made.

When goods are delivered under contract, it is the buyer's duty to look at the goods. He must inspect the goods and he must give them the reasonable inspection which is usually given to such class of goods. If he accepts them without inspection, he is responsible for them and cannot avoid his contract because of defects which a reasonable inspection would have disclosed.

Argued October 14, 1927. Appeal No. 203, October T., 1927, by defendants from judgment of C. P. No. 4,

Philadelphia County, March T., 1925, No. 6401, in the case of Beaunit Mills, Inc. v. Alexander Burstein and Jacob Burstein, trading as Burstein Brothers. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.   Affirmed.

Assumpsit to recover contract price of material sold by sample.   Before FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,622.43, and judgment thereon.   Defendants appealed.

*Error assigned* was the charge and judgment of the court.

*Edwin Fischer,* of *Rose and Fischer,* for appellant. —In sales by sample there is an implied warranty that the bulk shall correspond to the sample: Griffen v. Metal Product Co., 264 Pa. 254; Kellogg Bridge Company v. Hamilton, 110 U. S. 108; American Tank Co. v. Revert Oil Co., 108 Kans. 690, 196 Pac. 1111.

*Nochem S. Winnet,* and with him *James J. Welsh,* for appellee.—There must be inspection within a reasonable time: Wright v. General Carbonic Company, 271 Pa. 332; Meguire v. Gallagher, 89 Pa. Superior Ct. 576; Werbitsky v. Fisher, 64 Pa. Superior Ct. 284; Spiegelberg v. Karr, 24 Pa. Superior Ct. 339.

OPINION BY GAWTHROP, J., December 15, 1927:

Plaintiff has judgment on a verdict in a suit for the contract price of a quantity of bengalure, which is a kind of artificial silk material, sold and delivered by it to defendants. The latter, who are garment makers, averred in their affidavit of defense that plaintiffs represented at the time of the purchase that the material would be like another consignment purchased by, and

delivered to, defendants a short time before, and that it was suitable for manufacture into dresses; but that after defendants had accepted the same and had cut and sewed all but three pieces thereof they discovered that the material was defective and unlike the sample, in that it was so tender that it would not hold the thread of the kind ordinarily used in sewing the material into dresses; and that the defect was not discoverable upon the ordinary examination of such material by manufacturers. A counter claim was made for damages suffered. At the trial defendants produced evidence tending to prove that the manufacture of dresses from the material delivered on the first mentioned consignment disclosed no defects therein, but that the material in suit would not hold the stitches properly, "pulled into holes" and "came apart" when it was sewed into dresses. This evidence was supplemented by the testimony of an expert witness, that the defect was due to the making of the material of thread which was too course for the loom, which made the yarn "brittle." There was no proof that the sample order was made of finer threads. Plaintiff's evidence was to the effect that sewing the material with needles which were too large caused it to show weakness, and it undertook to demonstrate this fact by the use of finer needles upon the material before the jury. In submitting to the jury the questions whether the material was up to the standard of the sample in quality and whether it was defective, the learned trial judge said, inter alia: "When goods are delivered under contract, it is his (the buyer's) duty to keep his eyes open, to look at the goods, in fairness not only to himself but to the man he is buying from. He must inspect the goods and he must give that reasonable inspection which is usually given to the class of goods that are under discussion." The effect of a purchaser's failure to make a proper inspection was fully explained. The jury was told further that defendants

were not obliged to discover defects that were latent. Defendants admitted that they made no inspection of the material upon its delivery, but turned it over to a contractor for manufacture into dresses.

The only question which requires consideration on this appeal is that raised by the third assignment of error which complains of that portion of the charge relating to the subject of reasonable inspection of the material by defendants. The court said: "It does seem to me that when goods are sold and the needle is to be used upon them, and the use of a needle in the hands of a skillful workman would show the defect, that a stitch or two in the cloth is not an unreasonable thing to ask the buyer to put in before he commits himself and the seller to the loss of the consignment of sixteen hundred dollars' worth of goods. This man Swartz, who was the man who worked on the goods, in two seconds developed to his own satisfaction that four stitches put in the cloth showed this defect. It is a pity he didn't do that before he cut the goods. It has some bearing upon the reasonableness of requiring him, before he accepted the goods, or his employer, to at least put a few stitches in and see whether they would stand stitches, if his stitches were the proper kind of stitches. If you think a process like that, pulling the cloth to see if it was strong in all directions, and a stitch or two put in to see if it would stand needling, were reasonable methods of inspection, that the seller could expect the buyer to make, or the buyer expect the seller to make, according to the delivery, and the buyer failed to exercise such reasonable inspection, then the acceptance is final and the bill for the goods must be paid. Of course, if a man accepts goods he must pay for them. If he takes them and uses them for his own purpose, without an inspection, he is responsible for anything a reasonable inspection would have disclosed to him. It is said also that the materials are defective. Of course what I have said

about inspection will relieve you and me and everybody else from making experiments with the cloth, because it makes no difference if the cloth itself had holes on stitching if inspection was not made and should have been made." The criticism made of this instruction is that it was error to submit to the jury the question whether or not defendants should have made a test of the material with a needle. We find no merit in this complaint. If the defect in the material could have been discovered by so simple an operation as the putting of a few stitches in it, as defendants' witness testified, it seems to us that it was entirely proper to permit the jury to find that such an operation was a part of the reasonable inspection which defendants should have made.

All of the assignments of error are overruled and the judgment is affirmed.